**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICKY JOHNSON, | ) | Civil Action No. 15-cv-823 |
| | ) | |
| Petitioner, | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| v. | ) | |
| | ) | |
| BRENDA TRITT, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION**[1]

Presently before the Court is a petition for a writ of habeas corpus filed by state prisoner

Ricky Johnson ("Petitioner"), in which he is challenging the judgment of sentence imposed on

him by the Court of Common Pleas of Allegheny County, Pennsylvania, on February 28, 2007.

Respondents Brenda Tritt, the Attorney General of the State of Pennsylvania, and the District

Attorney of Allegheny County ("Respondents") have filed a motion to dismiss the petition as

untimely (ECF No. 27).

For the reasons set forth below, Respondents' motion will be granted, the petition for writ

of habeas corpus will be dismissed as untimely, and a certificate of appealability will be denied.

**I.      Facts and Procedural History**

Following a jury trial in the Court of Common Pleas of Allegheny County, Petitioner was

found guilty of criminal attempt, aggravated assault, and recklessly endangering another person.

The trial court sentenced Petitioner to 17 ½ to 35 years' imprisonment on February 28, 2007.

Petitioner's conviction and sentence was affirmed on direct appeal by the Superior Court of

Pennsylvania on February 2, 2009. He did not file a petition for allowance of appeal with the

---

1.      In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily
consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a
final judgment. jurisdiction by a United States Magistrate Judge.  *See* ECF Nos. 19 and 26.

Supreme Court of Pennsylvania. Petitioner alleges that his appellate counsel Arthur "Bloom never advised [him] of [the Superior Court's] decision, and that is why he "never sought further review in the Supreme Court of Pennsylvania" of the Superior Court's decision. (ECF No. 33 at 1). The record reflects that Attorney Bloom was disbarred by order dated March 23, 2009, following lengthy disciplinary proceedings involving an unrelated matter.[2] (ECF No. 27-2 at 28).

Petitioner has submitted a letter he sent to Attorney Bloom on October 23, 2008, inquiring into the status of his direct appeal, and Attorney Bloom's response thereto, in which he wrote that "Oral Argument [regarding Petitioner's direct appeal] has been scheduled for December 3, 2008 . . . . I will contact you following the Oral Argument to give an indication with respect to how the judges received our argument." (ECF No. 34-1 at 3). Petitioner has also submitted a letter he sent to Attorney Bloom on March 28, 2010, which was returned as "not deliverable as addressed." (ECF No. 34-1 at 4-5). In the letter, Petitioner wrote:

> I am writing you to inform you that I have written the Superior Court Prothonotary requesting a copy of my appeal docket sheet showing the disposition of my appeal. When I received the docket it showed the last entry's [sic], as February 02, 2009 Affirmed, Per Curiam and March 10, 2009 Remitted, Western District Filing Office. I received your letter after oral arguments and you stated that Superior Court panel agreed with the lower court and that we would be moving forward with the appeal and raising all claims of trial counsels [sic] ineffectiveness. I have made several attempts at contacting you by phone, with no luck.
>
> Attorney Bloom, I know you are aware that the time to file an appeal is running out? Would you please write back or accept my phone call ASAP!!! I understand that there is a lot of time and distance between us but that shouldn't be reason for a lack of communication.

(Id. at 4). Petitioner apparently attempted to resend the letter on April 18, 2010, but it was again

---

2.      Petitioner does not indicate in his filings when he learned of Attorney Bloom's disbarment. In the state court proceedings, however, he stated that he did not become aware until May 8, 2013. (ECF No. 27-2 at 11).

returned as undeliverable. (Id. at 3). The state court docket confirms that Petitioner was sent a copy of his docket sheet on February 17, 2010, in response to correspondence from him. (ECF 27-1 at 10).

On June 17, 2010, Petitioner filed his first *pro se* Post-Conviction Relief Act ("PCRA") petition in state court, which was dismissed as untimely on September 12, 2011. The Superior Court affirmed the dismissal of Petitioner's first PCRA petition on May 22, 2012, after having found that the petition was not timely. On July 8, 2013, Petitioner filed a second PCRA petition, which was dismissed on December 4, 2013. The Superior Court affirmed the dismissal, finding once again that the petition was untimely and that Petitioner had not satisfied any of the exceptions to the timeliness requirement. Petitioner filed a third PCRA petition on May 1, 2015.

Before the PCRA court issued a decision regarding the third PCRA petition, Petitioner filed the instant petition for writ of habeas corpus on September 1, 2015. In the petition, Petitioner acknowledged that his conviction had become final more than one year before he initiated these proceedings. However, he contended that his petition was not time-barred because:

> [he] was abandoned by Appellate Counsel, Arthur Bloom who committed fraud by continually advising [him] that his appeal was pending and that he was diligently seeking relief for the Petitioner. In reality, Attorney Bloom had been disbarred during the pendency of the appeal and was willfully advising the Petitioner that his appeal was pending when it had already been dismissed. This action caused a late filing.

(ECF No. 3 at 14).[3] The next day, upon motion by Petitioner, the Court stayed the case and held it in abeyance so Petitioner could exhaust his state law remedies. The case was reopened on

---

3.      Petitioner's contention that Attorney Bloom was "disbarred during the pendency of the appeal" is factually inaccurate. (ECF No. 3 at 14). As already noted, the record reflects that Attorney Bloom was actually disbarred on March 23, 2009, which was more than one month after Petitioner's direct appeal was decided. (ECF No. 27-2 at 28).

August 9, 2016 – approximately one month after the Superior Court issued an opinion affirming the PCRA court's dismissal of the third petition as untimely.

On October 25, 2016, Respondents filed a motion to dismiss, in which they argue that the petition should be dismissed as untimely. Petitioner filed a "reply" on January 25, 2017, arguing that Respondents' motion to dismiss is procedurally improper and, in any event, that he is entitled to statutory and equitable tolling or to an alternative start date pursuant to 28 U.S.C. § 2244(d)(1)(B) because of "attorney abandonment" and

> other impediments created by state action that prevented petitioner from timely filing his Federal Habeas Petition such as: (A) the state Court's refused [sic] to apply the exceptions of 42 Pa.C.S. §§ 9545(b)(1)(ii), (b)(2), to any of the PCRA petitioner. (B) The law in Pennsylvania is in conflict and in a state of flux regarding issues of public record, the requirements of the Pro-se, unrepresented incarcerated petitioner for filing untimely PCRA petitions under the exceptions of the PCRA Statute. (C) The rule of untimeliness/time-bar of filing PCRA petitions is not clearly established and consistently followed. (D) The state Court's application of the time-bar rule was/is an exorbitant application of the rule in petitioner's case. (E) There was government interference that also interfered with petitioner timely filing his Federal Habeas Petition which consisted of, petitioner being transferred out-of-State to Virginia, without access to Pennsylvania law, Legal materials/personal property, the state Court's and prior Attorney's [sic] refused to answer petitioner's phone calls from the prison, thus, which were all impediments that constituted extraordinary circumstances that stood in petitioners [sic] way and prevented the timely filing of his Federal Habeas petition.

(ECF No. 33 at 4-5).

## II.     Discussion

### A.     Motion to Dismiss as a Response to a Petition for a Writ of Habeas Corpus

Initially, Petitioner asserts that a motion to dismiss is a procedurally improper response to a habeas corpus petition. This argument is incorrect. The Rules Governing Section 2254 Cases in the United States District Courts ("the 2254 Rules") were amended in 2004 to expressly permit district courts to follow the "common practice" of filing a pre-answer motion to dismiss a habeas corpus petition. Rule 4 of the 2254 Rules states the following:

If the petition is not dismissed, the judge must order the respondent to file an answer, motion, **or other response** within a fixed time, or to take other action the judge may order. In every case, the clerk must serve a copy of the petition and any order on the respondent and on the attorney general or other appropriate officer of the state involved.

(emphasis added). The 2004 Advisory Committee Notes to Rule 4 state:

> The amended rule reflects that the response to a habeas petition may be a motion.

***

> **Changes Made After Publication and Comments**. The Rule was modified slightly to reflect the view of some commentators that it is common practice in some districts for the government to file a pre-answer motion to dismiss. The Committee agreed with that recommendation and changed the word "pleading" in the rule to "response." It also made several minor changes to the Committee Note.

Furthermore, Rule 2254(E)(1)(a) of the Local Rules for the United States District Court for the Western District of Pennsylvania explicitly permits a respondent to "file a motion to dismiss if the respondent believes that there is a clear procedural bar to the action, such as . . . [the] statute of limitations." Thus, a pre-answer motion to dismiss is an appropriate response to a habeas corpus petition under both Rule 4 of the 2254 Rules and Local Rule 2254(E)(1)(a). Having found that Respondents' motion to dismiss is the proper vehicle by which to attack the timeliness of the petition, the Court will proceed to address the parties' remaining arguments.

**B.      Timeliness**

AEDPA imposes a one-year limitations period for a state prisoner to file a federal habeas petition. Generally, the limitations period begins to run on the date the judgment of sentence becomes final. 28 U.S.C. § 2244(d)(1)(A). A judgment becomes final at the conclusion of direct review or upon the expiration of time for seeking such review. Id.; see Gonzales v. Thaler, --- U.S. ----, 132 S. Ct. 641, 653-54 (2012).  One of the following alternative start dates, however,

may apply:

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(B)-(D). Furthermore, the AEDPA limitations period is subject to both statutory and equitable tolling. Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999).

Petitioner's judgment became final on March 4, 2009, which was the last date on which he could have sought review from the Pennsylvania Supreme Court. See Pa. R.A.P. 1113(a) (providing that petition for allowance of appeal must be filed within 30 days of the Superior Court's order); Swartz v. Meyers, 204 F.3d 417, 424 (3d Cir. 2000) ("[T]he period of limitation tolls during the time a prisoner has to seek review of the Pennsylvania Superior Court's decision[,] whether or not review is actually sought."). He needed to file his federal habeas petition within one year of that date, or March 4, 2010. Since Petitioner did not file the instant petition until more than five years beyond that date, the petition is facially untimely and must be dismissed unless Petitioner can show that the limitations period should be tolled, either statutorily or equitably, or that an alternate start date should apply.

## C.     Statutory Tolling

Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, "a state postconviction petition rejected by the state court as untimely is

not 'properly filed' within the meaning of § 2244(d)(2)." <u>Allen v. Siebert</u>, 552 U.S. 3, 5 (2007) (citing <u>Pace v. DiGuglielmo</u>, 544 U.S. 408 (2005)). Because the state courts rejected Petitioner's PCRA petitions as untimely, he is not entitled to statutory tolling under § 2244(d)(2). This is true notwithstanding Petitioner's arguments that the state courts erred when they found his three PCRA petitions untimely, for this Court "must defer" to the holdings of the state courts on that issue. <u>See</u> <u>Merritt v. Blaine</u>, 326 F.3d 157, 165–66 (3d Cir. 2003).

### D.     Equitable Tolling

Although AEDPA's statute of limitations is subject to equitable tolling, the Third Circuit Court of Appeals has held that "courts should be sparing in their use of the doctrine" and limit its application only to the "rare situation where [it] is demanded by sound legal principles as well as the interests of justice." <u>LaCava v. Kyler</u>, 398 F.3d 271, 275 (3d Cir. 2005) (internal citations omitted). Equitable tolling is thus only appropriate when "'the principles of equity would make the rigid application of a limitation period unfair,' such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." <u>Id.</u> at 276 (quoting <u>Miller v. New Jersey State Dep't of Corr.</u>, 145 F.3d 616, 618 (3d Cir. 1998)). "Due diligence does not require 'the maximum feasible diligence;'" but "it does require reasonable diligence in the circumstances." <u>Schlueter v. Varner</u>, 384 F.3d 69, 74 (3d Cir. 2004) (internal citations omitted). "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." <u>LaCava</u>, 398 F.3d at 277. "The fact that a petitioner is proceeding *pro se* does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." <u>Ross v. Varano</u>, 712 F.3d 784, 799-800

(3d Cir. 2013) (citing Brown v. Shannon, 322 F.3d 768, 774 (3d Cir. 2003); Doe v. Menefee, 391 F.3d 147, 177 (2d Cir. 2004)).

Petitioner argues that he is entitled to equitable tolling because Attorney Bloom "abandoned" him. As Petitioner elaborates in his brief, he "never sought further review in the Supreme Court of Pennsylvania" of the Superior Court's decision (and by extension, did not file a timely PCRA petition) because Attorney "Bloom never advised [him] of [the Superior Court's] decision" regarding his appeal. (ECF No. 33 at 1).

To be sure, courts have held that "[a]n attorney's total failure to communicate with his client, particularly where the attorney has failed to inform his client that his case has been decided and that decision implicates the client's ability to bring further proceedings, can constitute attorney abandonment, thereby supplying 'extraordinary circumstances' justifying equitable tolling of the statute of limitations." Warren v. Sauers, No. 1:12-CV-1819, 2015 WL 778208, at *8 (M.D. Pa. Feb. 24, 2015) (citing Holland v. Florida, 560 U.S. 631, 652 (2010)); Ross, 712 F.3d at 803; Gibbs v. Legrand, 767 F.3d 879, 887 (9th Cir. 2014)). but see LaCava, 398 F.3d at 277 (noting that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling"). However, the Court need not decide whether Petitioner has shown extraordinary circumstances because, even assuming that he has, he has not shown that he exercised reasonable diligence.

Petitioner's last contact with Attorney Bloom came sometime after December 8, 2008, when Attorney Bloom sent him the letter regarding oral argument on his direct appeal. (ECF No. 34-1 at 4). According to the letter Petitioner tried to send to Attorney Bloom in March 2010, Petitioner "made several attempts at contacting [Attorney Bloom] by phone, with no luck,"

during the months that followed. (ECF No. 34-1 at 5). Despite Attorney Bloom's unresponsiveness, Petitioner waited until sometime in or around February 2010 – i.e., another 13 or 14 months – to write to the Superior Court Prothonotary to request a copy of his docket sheet, which was sent on February 17, 2010. At that point, his judgment had already been final for nearly one year, and as he recognized in the letter he tried to send Attorney Bloom in March 2010, he knew the time for filing an appeal was running out. (ECF No. 34-1 at 4-5). This delay in inquiring into the status of his case evinces a lack of diligence on Petitioner's part. See LaCava, 398 F.3d at 277-78 (finding a lack of due diligence where petitioner, represented by counsel, waited 21 months to inquire with the state courts as to the status of his filing).

The lack of diligence did not end there, though. Once Petitioner learned of the status of his direct appeal via the docket sheet, he waited an additional four months, until June 17, 2010, to file his first PCRA petition, which the state courts held was untimely. Ultimately, he waited another five years to file his federal habeas petition, choosing instead to file two more untimely state-court petitions over the span of two and ½ years. This, too, evinces a lack of diligence. See Pace, 544 U.S. at 419 (finding that petitioner's lack of diligence after alleged extraordinary circumstance reinforced an adverse diligence determination for tolling period). Since Petitioner did not display reasonable diligence under the circumstances in pursuing his rights, the he is not entitled to tolling of the AEDPA's statute of limitations.[4] Cf. Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 463 (6th Cir. 2012) (explaining that courts "have declined to allow equitable

---

4.      Because Petitioner has failed to show that he exercised reasonable diligence in pursuing his rights, the Court finds no basis to hold an evidentiary hearing on this issue. See LaCava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005) (citing Robinson v. Johnson, 313 F.3d 128, 143 (3d Cir. 2002)) (explaining that a "hearing on availability of equitable tolling [is] not warranted where petitioner failed to show that he exercised reasonable diligence in attempting to file a timely petition").

tolling where a petitioner's attorney misled him into believing that his appeal was still pending before the state court because the petitioner failed to diligently monitor the progress of his appeal"). The Court recognizes that Petitioner may have believed that he had to exhaust his state law remedies before filing his federal petition, but as the Court of Appeals has made clear, this sort of alleged "procedural conundrum" does not justify equitable tolling. Rather, the proper course of action would have been to protectively file a habeas petition in federal court, along with a request to "stay and abey the federal habeas proceeding until state remedies [were] exhausted." Darden v. Sobina, 477 F. App'x 912, 918 (3d Cir. 2012).

To the extent that Petitioner is arguing that he is entitled to equitable tolling because he was "transferred out-of-State to Virginia, without access to Pennsylvania law, Legal materials/personal property," (ECF No. 33 at 4-5), he is misguided. According to the evidence Petitioner has submitted with his petition, he was transferred to the custody of the Virginia Department of Corrections on April 29, 2010, which was after the time for filing a federal habeas petition had already expired. And prior to his transfer, he was in state custody with full access to Pennsylvania legal materials. Thus, the out-of-state transfer does not rise to the level of "extraordinary circumstances." Cf. United States v. Thomas, 713 F.3d 165, 174–75 (3d Cir. 2013) (holding that although petitioner's "transfer to state custody may have made it more difficult to file a timely § 2255 motion, increased difficulty does not, by itself, satisfy the required showing of extraordinary circumstances").

E.     The "Impediment-to-Filing" Statutory Exception

Petitioner also asserts that he is entitled to relief under 28 U.S.C. § 2244(d)(1)(B) because there were "other impediments created by state action that prevented [him] from timely filing his Federal Habeas Petition."

Under § 2244(d)(1)(B), the statute of limitations for the filing of a habeas corpus petition does not begin to run until "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." The AEDPA does not define "impediment to filing," and the Third Circuit Court of Appeals has not yet defined the phrase. Pabon, 654 F.3d at 404. Other courts have found, however, that an "impediment to filing" might exist where a state court refuses to rule on a constitutional issue properly before it, Lackawanna Cty. Dist. Attorney v. Coss, 532 U.S. 394, 405 (2001); where a clerk's office fails to timely file a petition, Critchley v. Thaler, 586 F.3d 318, 320 (5th Cir. 2009); where a state delays a prisoner's receipt of notice that the judgment in his case is final, Earl v. Fabian, 556 F.3d 717, 726 (8th Cir. 2009); or where a prison offers inmates an inadequate law library, Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000). Whatever the facts of a particular case, the plain language of the statute makes clear that the prisoner must be "prevented" from filing a petition for habeas corpus. 28 U.S.C. § 2244(d)(1)(B).

Here, no matter the standard that applies, Petitioner has not established that he is entitled to take advantage of a delayed "trigger" date under § 2244(d)(1)(B). None of the alleged impediments he has identified were "created by State action in *violation of the Constitution or laws of the United States*." Id. (emphasis added). At bottom, Petitioner's contention is that the state courts misapplied state law in finding that his PCRA petitions were untimely and did not satisfy any of the exceptions to the timeliness requirement. However, since this Court must defer to the state courts' holdings with regard to whether Petitioner's PCRA petitions were timely, see Merritt, 326 F.3d at 165–66, it can hardly be said that the mere fact that the state courts reached an unfavorable decision entitles Petitioner to seek refuge under § 2244(d)(1)(B). Moreover,

insofar as Petitioner is contending that his transfer to Virginia constitutes a state-created impediment to filing, the Court rejects that argument for the same reasons it found that the transfer did not justify equitably tolling.[5] See also Bandy v. Wenerowics, No. CIV.A. 13-673, 2013 WL 6231312, at *6 (E.D. Pa. Dec. 2, 2013) (rejecting similar argument under § 2244(d)(1)(B) because "even if the transfer to the Virginia correctional institution would constitute governmental interference, this transfer did not occur until well after the AEDPA limitations period had expired").

## III.  Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied as untimely. Accordingly, a certificate of appealability will be denied.

---

5.      Additionally, if a petitioner satisfies the basis requirements of § 2244(d)(1) (B), the limitations period begins when the impediment is removed. Pabon v. Mahonoy, 654 F.3d 385, 403–404 (3d Cir.2011) (citing § 2244(d)(1)(B)).  According to the evidence Petitioner has submitted, he returned to the custody of the Pennsylvania DOC on March 26, 2012. Thus, the limitations period would have restarted on that date. The instant petition, however, was not filed until more than three years later – far beyond any possible enlargement of the limitations period to which Petitioner would have been entitled under § 2244(d)(1) (B).

**IV.    Conclusion**

For the reasons set forth above, Respondents' motion will be granted, the petition for writ

of habeas corpus will be dismissed as untimely, and a certificate of appealability will be denied.

A separate Order follows.


DATED:  February 28, 2017

BY THE COURT:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:      Ricky Johnson,
         GZ1879
         SCI Greene
         175 Progress Dr.
         Waynesburg, PA 15370
         (via First Class U.S. Mail)

         Rusheen R. Pettit
         Office of the District Attorney
         (via ECF electronic notification)